UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JARED SKINNER,

Plaintiff,

-against-

ANDREW LAUFER; JOHN DOE; NYC COMPTROLLERS OFFICE,

Defendants.

26-CV-6754 (KMW)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

KIMBA M. WOOD, United States District Judge:

Plaintiff, who currently is detained at the Middlesex County Adult Correction Center and proceeds *pro se*, asserts claims for alleged violations of his federal constitutional rights. By Order dated August 14, 2026, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[1] (ECF No. 5.)

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint , or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

(2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction over the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

## BACKGROUND

The following facts are drawn from the complaint.[2] In August 2023, Plaintiff was taken into the custody of the New York City Department of Correction ("DOC") as a pretrial detainee at Rikers Island. (ECF 1 at 4.) In December 2023, while Plaintiff was still in DOC custody, Plaintiff's father died, but authorities failed to notify Plaintiff, and he was unable to attend the funeral. (*Id.*) On an unspecified date, Plaintiff was assaulted at Rikers Island.[3] (*Id.*) Both of Plaintiff's wrists were broken, and he required surgeries on his left hand and placement of pins. (*Id.*) In January 2024, Plaintiff was "bonded out" from Rikers Island, and in December 2024, the criminal charges against him were dismissed. (*Id.*)

Plaintiff wished to file a civil claim for wrongful confinement and malicious prosecution, and he retained Andrew Laufer and the Laufer Law Group on a contingency-fee basis. (*Id.*) Laufer filed a claim with the NYC Comptroller's Office on Plaintiff's behalf seeking five million dollars in damages. (*Id.* at 5.) It is unclear if the assault was also raised with the NYC Comptroller's Office. Thereafter, the hearing required by New York's General Municipal Law 50(h) was rescheduled multiple times. (*Id.* at 4.) A hearing was set for March 2025. (*Id.*)

---

[2] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation appear as in the original unless noted otherwise.

[3] It is unclear whether Plaintiff claims that a DOC employee assaulted Plaintiff or failed to protect him from assault, or whether Plaintiff was assaulted by another detainee. Plaintiff has not named any defendant in connection with the assault, and the Court therefore does not understand him to bring a claim in this action based on this injury. Notice of claim statutes, such as New York's General Municipal Law 50, are inapplicable to federal Section 1983 claims. *See Felder v. Casey*, 487 U.S. 131, 134 (1988) (reversing state court decision that notice-of-claim statute applied to federal civil rights actions brought in state court under 42 U.S.C. § 1983).

Before the March 2025 hearing, Plaintiff notified the NYC Comptroller's Office that he was incarcerated at Middlesex County Jail and asked leave to appear remotely, but he received no response. (*Id*. at 4-5.)

In May 2025, Plaintiff went to the NYC Comptroller's Office, but he was told no information could be provided to him because he had an attorney of record (Laufer). (*Id.* at 5.) Plaintiff then went to Laufer Law Group and was told that they had sent him a "drop letter"; Plaintiff states that he never received the "drop letter" and does not know the reasons for Laufer's termination of representation. (*Id.*) Someone at the Laufer Law Group told Plaintiff that the "drop letter" was their only obligation. (*Id.*) Since then, both the Laufer Law Group and the NYC Comptroller's Office have refused to provide Plaintiff with claim status information.

The Court construes Plaintiff's complaint as asserting that attorney Laufer acted negligently by abandoning Plaintiff's pre-litigation claim before the NYC Comptroller's Office without protecting his interests (such as by submitting a written letter of withdrawal to the assigned claims examiner and including Plaintiff's contact information where further communications should be sent). *See also* N.Y. Comp. Codes R. & Regs. Tit. 22, § 1200, Rule 1.16(b).[4]

Plaintiff also sues the NYC Comptroller's Office, Laufer and John Doe attorney assistant at Laufer Law Group for violation of unspecified federal constitutional rights, and the Court construes the complaint as also asserting state and common law claims.

[4] In some situations, law office failure might be a basis for excusing a missed 50-h hearing or an extension of time to serve a late notice of claim.

## DISCUSSION

### A. NYC Comptroller's Office

In federal court, an entity's capacity to be sued is generally determined by the law of the state where the court is located. *See* Fed. R. Civ. P. 17(b)(3); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*.") (emphasis in original.) Under New York City's Charter, agencies of the City of New York cannot be sued in the name of the agency, unless state law specifies otherwise. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). The NYC Comptroller's Office has "the power to settle and adjust all claims in favor of or against the city," but does not have the power to sue and be sued in its own name. *See* N.Y. City Charter ch. 5, § 93 (Powers and duties of the Comptroller); *Aristilde v. Emery Celli Brinckerhoff Abady Ward & Maazel LLP*, No. 25-CV-9658 (JGK), 2026 WL 2185366, at *1 (S.D.N.Y. July 28, 2026) ("The New York City Office of the Comptroller is an agency of the City of New York and is therefore not a suable entity."). Claims against the NYC Comptroller's Office for alleged violations of Plaintiff's rights must therefore be asserted against the City of New York.

In addition, when a plaintiff sues a municipality like the City of New York under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be

subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim against the City of New York under Section 1983, the plaintiff must allege facts showing (1) the existence of a City of New York policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80-81 (2d Cir. 2012).[5]

Plaintiff might be understood as alleging that the NYC Comptroller's policy of discussing the claims of represented parties only with their attorneys violates his due process rights. "The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

When a plaintiff brings a procedural due process claim based on unauthorized or random acts by government employees, a post-deprivation hearing is the only form of due process that can be made available. *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (1996). By contrast, "in situations where the State feasibly can provide a predeprivation hearing before taking property, it must do so regardless of the adequacy of the postdeprivation

[5] A plaintiff may satisfy the policy or custom requirement by alleging one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (Preska, J.) (citations omitted).

remedy." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990); *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 467 (2d Cir. 2006) ("[W]hen the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing").

Here, Plaintiff can be understood as alleging that he had a property interest in one or more state law claims presented on his behalf to the NYC Comptroller's Office. The alleged policy of declining to discuss claims directly with represented parties appears to be an established procedure. Plaintiff contends that attorney Laufer "dropped him," for unknown reasons, by mailing him a letter, which he never received, without contacting the NYC Comptroller's Office, where Laufer is still listed as counsel of record.

First, it is not clear that Plaintiff has been finally deprived of his property interest in his state law claims. Here, state law appears to provide an opportunity for a belated hearing. Where a "claimant fails to appear at the hearing or requests an adjournment or postponement beyond the ninety-day period," then a lawsuit on the state law claims "may not be commenced until compliance with the demand for examination." Gen. Municipal Law § 50(h)(5). However, '[i]f the claimant requests an adjournment or postponement beyond the ninety day period, the city . . . shall reschedule the hearing for the earliest possible date available." *Id.* It is therefore not clear whether Plaintiff has been finally deprived of his state law claims because he may still be able to request a hearing in writing.[6]

---

[6] The Court also notes, however, that N.Y. General Municipal Law § 50-i provides a 1-year and 90-day statute of limitations to protect municipalities from stale state-law claims. *See, e.g.*, *Campbell v. City of New York*, 4 N.Y.3d 200, 202 (2005) (holding that "section 50-i sets forth a statute of limitations [subject to tolling], not a condition precedent" to suit). Moreover, "any "extension shall not exceed the time limited for the commencement of an action by the claimant against the public corporation." *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 348 (E.D.N.Y. 2013) (citing N.Y. Gen. Mun. Law § 50–e(5)).

Second, even if Plaintiff has been deprived of the ability to pursue state law claims, the allegations do not suggest that the deprivation was caused by policies of the NYC Comptroller's Office. The NYC Comptroller's Office can communicate directly with a claimant after receiving notice of an attorney's withdrawal and the claimant's contact information. Plaintiff alleges that the NYC Comptroller's Office was not notified of his attorney's withdrawal, leaving him without notice of the rescheduled 50(h) hearing. These allegations are insufficient to allege that the government's process is constitutionally inadequate. Plaintiff's Section 1983 claim against the City of New York for alleged violations of his constitutional rights must therefore be dismissed for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. Claims Against Laufer and Doe**

**1. Constitutional Claims**

To state a claim under Section 1983 for a violation of constitutional right, a plaintiff must allege that the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Plaintiff alleges that he retained Defendant Andrew Laufer, an attorney, to represent him in administrative proceedings. Absent special circumstances not present here, an attorney's legal representation of an individual does not constitute state action for the purpose of a claim under Section 1983 against that attorney. *See Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty . v. Dodson*, 454 U.S. 312, 318-19 (1981), and *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)); *see also Shorter v. Rice*, No. 12-CV-0111 (JFB) (ETB), 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of

state law merely by virtue of their position."); *Frierson-Harris v. Hough*, No. 05-CV-3077, 2006 WL 298658, at *5 (S.D.N.Y. Feb. 7, 2006) ("That a lawyer is an officer of the court does not render him a state actor for purposes of § 1983."). Because Defendant Laufer was not functioning as a state actor, Plaintiff cannot state a federal claim against Laufer under Section 1983 for violating his constitutional rights. Plaintiff also names "attorney assistant John Doe" from the Laufer Law Group, and there is similarly no basis for treating Defendant John Doe as a state actor rather than a private individual. Plaintiff's Section 1983 claims against these defendants for alleged violations of his federal constitutional rights must therefore be dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**2. State-law Claims**

The Court construes Plaintiff's complaint as asserting state and common law claims against Defendants Laufer and Doe for, among other things, legal malpractice and negligence. A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state and common law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))). Plaintiff's state

and common law claims against Defendants Laufer and Doe are therefore dismissed, without prejudice to Plaintiff's reasserting these claims in state court or another appropriate forum.

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Lucente v. Int'l Bus. Machs. Corp*., 310 F.3d 243, 258 (2d Cir. 2002). . Although it is unclear what federal claim Plaintiff might assert here, the Court grants Plaintiff 30 days' leave to file an amended complaint if he wishes to do so.

**CONCLUSION**

The Court dismisses Plaintiff's federal claims, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), declines supplemental jurisdiction of Plaintiff's state law claims, 28 U.S.C. § 1367(c)(3), and grants Plaintiff leave to replead, if he wishes to do so, by filing an amended complaint within 30 days of the date of this Order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated: September 1, 2026
New York, New York

/s/ Kimba M. Wood

KIMBA M. WOOD
United States District Judge